UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Fahd Ahmed,

    Plaintiff,

v.

Raj P. Khanijow, individually and Tecvox
OEM Solutions, LLC, an Alabama limited
liability company,

    Defendants.
_____/

Case No. 11-11887

Honorable Nancy G. Edmunds

**ORDER AND OPINION GRANTING DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION [12]**

Before the Court is Defendants Raj P. Khanijow and Tecvox OEM Solutions, LLC's motion to dismiss Plaintiff Fahd Ahmed's complaint. Defendants argue that the Court lacks subject matter jurisdiction because complete diversity between the parties does not exist–stating that Plaintiff is a citizen of Michigan and that Plaintiff has alleged that he is a member of Tecvox, an allegation that renders Tecvox a citizen of Michigan, as well. Defendants therefore request dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1). They have also moved to dismiss Plaintiff's complaint pursuant to Rule 12(b)(6) or, alternatively, to transfer the case.[1]

---

[1] Defendants have asserted several bases for dismissal of Plaintiff's complaint. The Court must addressed the Rule 12(b)(1) motion first, though, because a Rule 12(b)(6) motion is mooted if the Court lacks subject matter jurisdiction. *Moir v. Greater Cleveland Reg'l Transit. Auth.*, 895 F.2d 266, 269 (6th Cir. 1990). The parties have also requested that the Court address only the jurisdictional part of the motion at this time.

The Court finds that a hearing will not significantly aid the decision process and therefore decides the motions on the briefs pursuant to Eastern District of Michigan Local Rule 7.1(e)(2).

Because the Court finds that Plaintiff has pleaded that he is a member of Tecvox, and the Court, for this motion, accepts that allegation as true, the Court GRANTS Defendants' motion to dismiss for lack of subject matter jurisdiction.

**I.    Facts**

**A. The parties**

Plaintiff states that he is a resident and citizen of Wayne County, Michigan. (Compl. ¶ 1.) Since 2000, he has been an electrical design engineer with Ford Motor Company. (*Id.* ¶ 16.) Before working at Ford, Plaintiff was a lead systems engineer with General Motors; and before that, he was an electrical engineer for Chrysler. (*Id.*) Plaintiff states that his area of expertise is in the automotive electronics and multi-media systems field. (*Id.* ¶ 17.) He states that he has sixteen years of experience in this field and that he has "overseen the planning, design, release, and production of dozens of automotive interior electronic systems on a global basis." (*Id.*)

Plaintiff alleges that Tecvox is an Alabama limited liability company with its principal place of business in Huntsville, Alabama. (*Id.* ¶ 3.) Tecvox is a supplier of consumer electronic accessories for global automobile manufacturers and suppliers. (*Id.* ¶ 18.) It has sales offices and manufacturing facilities throughout the world. (*Id.*) Tecvox was formed in September, 2004, after its predecessor was dissolved. (*Id.* ¶ 19.)

Plaintiff states that Khanijow is Tecvox's majority owner. (*Id.* ¶ 20.) Plaintiff alleges that Khanijow is a resident and citizen of Madison County, Alabama. (*Id.* ¶ 2.) Plaintiff

states that "Defendants maintain that [] Khanijow is the only member of [] Tecvox[.]" (*Id.* ¶ 4.) Plaintiff therefore alleges that, for diversity jurisdiction purposes, Tecvox is considered only an Alabama citizen. (*Id.*)

**B. The parties' relationship with each other**

When Tecvox's predecessor was dissolving and "[f]acing the reality that [the] business was dying," "Khanijow decided to completely change the focus of his business." (*Id.* ¶ 22.) To do so, he began looking for opportunities in the automotive supply market–a market with which he was not familiar. (*Id.*) Through his search, he met Plaintiff. (*Id.* ¶ 23.)

Khanijow and Plaintiff first met in 2004. At that meeting, and notwithstanding Tecvox's limited resources, Khanijow "proposed to [Plaintiff] that they partner together to create an automotive supply company." (*Id.* ¶ 25.) "Khanijow said that he possessed strategic relationships with Chinese manufacturers, and that these [contacts,] combined with [Plaintiff's] industry knowledge and contacts, would enable Tecvox to sell components on an extremely cost-competitive basis to automotive suppliers and [original equipment manufacturers (OEMs).]" (*Id.* ¶ 25.)

Plaintiff states that, because Khanijow could not afford to pay Plaintiff a consultant's fee, he instead "promised [Plaintiff] that if they successfully partnered together in establishing a viable automotive supplier, [Plaintiff] would be made a co-owner and full-time employee of [Tecvox.]" (*Id.* ¶ 26.) Upon that assumption, Plaintiff states that he agreed to be Khanijow's partner. (*Id.* ¶ 27.)

In September, 2004, Khanijow dissolved his company and filed articles of organization for Tecvox. (*Id.* ¶ 28.) After Tecvox was created, Plaintiff created a business plan for

3

Tecvox "that mapped out the scope of its operation, manufacturing capabilities, marketing strategy and business forecasts." (*Id.* ¶ 29.) Plaintiff states that this plan "would serve as the blueprint for [Tecvox's] eventual success." (*Id.*)

Putting the business plan into practice, Plaintiff states that he played an integral role in Tecvox's first product launch and securing the status of a certified supplier for a Tier I company. (*Id.* ¶ 38.) This first launch and status, Plaintiffs alleges, paved "the way for new customers and future supply contracts." (*Id.*)

After the parties secured that status, Plaintiff states that he and Khanijow returned to their discussion about Plaintiff joining Tecvox as an owner and full-time employee. (*Id.* ¶ 39.) Plaintiff alleges that Khanijow "persuaded [him] that it was too early [to have him be a co-owner] because [Tecvox] could not afford the overhead of two full-time managers." (*Id.* ¶ 40.) So things with Plaintiff at Tecvox remained at the status quo. (*Id.* ¶ 41.) But Plaintiff insisted that Khanijow "put in writing [the] promise of future shared ownership of Tecvox[.]" (*Id.* ¶ 41.) Plaintiff states Khanijow agreed to this demand. (*Id.* ¶ 42.)

On May 25, 2005, Plaintiff states that he and Khanijow executed an option agreement (the "Option"), under which Plaintiff had the choice to purchase a forty-nine percent ownership interest in Tecvox for $1,000.00. (*Id.* ¶ 43.)

The Option provided that "[u]pon the execution of the option by [Plaintiff], [Plaintiff] shall become a Member of [Tecvox] and thereby be bound, governed, and subject to the Operating Agreement of the Company." (*Id.* ¶ 44) (first alteration in Complaint.)

Plaintiff states that, with his contributions, Tecvox continued to grow, and thrived. He helped Tecvox launch several other products and he states that he was instrumental in securing supply contracts with other OEMs and automotive companies.

4

Despite all of Tecvox's success, when Plaintiff approached Khanijow about joining Tecvox on a full-time basis, Plaintiff alleges that Khanijow "falsely told [Plaintiff] that [Tecvox] was not yet financially stable enough to match [Plaintiff's] compensation and benefits at Ford." (*Id.* ¶ 55.) Plaintiff states that Khanijow continually stressed how valuable Plaintiff was to Tecvox. (*Id.* ¶ 56.) Plaintiff alleges that, based upon this statement as well as other representations, he delayed executing the Option and instead devoted "his time, talent, and expertise to [Tecvox's] growth and success." (*Id.* ¶ 57.)

On March 31, 2007, Plaintiff states that he formally exercised his rights under the Option. (*Id.* ¶ 59.) He did so by having his attorney send Khanijow a written notice and a check for the $1,000.00 Option amount. (*Id.*) Plaintiff alleges that, after he exercised the Option, "he and Khanijow began negotiating an operating agreement that would . . . define the terms of [Plaintiff's] employment and establish a formula for valuing a Member's ownership interest for purposes of a buyout in the event of a defined triggering event." (*Id.* ¶ 60.) Throughout the negotiations for an operating agreement, Plaintiff states that Khanijow "repeatedly acknowledged that [Plaintiff] was . . . an owner or 'member' of [Tecvox] by virtue of him having exercised his rights under the Option." (*Id.* ¶ 61.)

Plaintiff points to a December 4, 2007 letter in which he stated to Khanijow, "I am not an employee per se, but a 49 percent shareholder of the company. I own half of the company and whether it is doing three or thirty million, that is what we have built and I will not be able to walk away with a bone." (*Id.* ¶ 62.) Plaintiff states that Khanijow responded, did not dispute Plaintiff's ownership, and stated, "[d]o not stress . . . I have enough [money] for both of us!" (*Id.*) (alteration in complaint.) Later that month, Plaintiff states that Khanijow confirmed that Plaintiff's "[m]embership is already in effect. This issue is not up

5

for any further discussion." (*Id.* ¶ 63) (alteration in complaint.) Plaintiff also states that Khanijow wrote to him, "as far as this company goes . . . it is not yours, it is ours." (*Id.*)

In January, 2008, Plaintiffs alleges that Khanijow conveyed to him that he was a "shareholder, with no real say in anything until [he] c[a]me on board.!" (*Id.* ¶ 64.) But then in February, 2008, Khanijow "again confirmed in writing that [Plaintiff's] membership interest in Tecvox [] was already in effect." (*Id.* ¶ 65.)

In early 2009, Plaintiff states that Khanijow stopped responding to Plaintiff's correspondence and requests for information. (*Id.* ¶ 68.)

On March 31, 2010, Plaintiff states that Khanijow's attorney took the position that Plaintiff "never properly exercised his rights under the Option [] because 'the method of transmittal (by first class mail and e-mail)' was 'inconsistent' with the [Option's] requirement that notice 'be sent [by] registered mail." (*Id.* ¶ 69.)

Plaintiff maintains that, throughout his interaction with Khanijow and Tecvox, Khanijow withheld information and "[went] to great lengths to ensure that [Plaintiff] ha[d] little or no knowledge of [Tecvox's] level of income/profits from year to year or how Khanijow [] appropriated this income/profit." (*Id.* ¶ 71.)

On April 28, 2011, Plaintiff filed this complaint alleging: breach of contract; oppression, dilution & squeeze-out of minority member by majority member; fraud; breach of fiduciary duty–Kahnijow; dissolution of Tecvox; unjust enrichment; promissory estoppel–Khanijow; accounting and inspection; and declaratory relief. He alleges that filing in this Court is proper based upon diversity jurisdiction.

II. **Analysis**

**A. Plaintiff has not sufficiently pleaded subject matter jurisdiction**

Defendants have moved to dismiss Plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of complete diversity, arguing that the Court does not have subject matter jurisdiction. Defendants argue that Plaintiff's complaint alleges that Plaintiff is a member of Tecvox, and that allegation destroys the diversity requirement. Plaintiff argues that complete diversity exists because he is a citizen of Michigan, Khanijow is a citizen of Alabama, and Khanijow claimed to be Tecvox's sole member, making Tecvox also an Alabama citizen for diversity jurisdiction purposes. (Pl.'s Resp. at 5.) The Court agrees with Defendants.

A federal court has subject matter jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between [] citizens of different States[.]" 28 U.S.C. § 1332(a)(1). Subject matter jurisdiction exists only if complete diversity–no plaintiff is a citizen of the same state as any defendant–exists. *Glancy v. Taubman Ctrs., Inc.*, 373 F.3d 656, 664 (6th Cir. 2004) (citation omitted). Because Defendants have challenged jurisdiction pursuant to Rule 12(b)(1), Plaintiff bears the burden of proving jurisdiction to survive the motion. *Moir v. Greater Cleveland Reg'l Transit. Auth.*, 895 F.2d 266, 269 (6th Cir. 1990). He must therefore prove that he is not a member of Tecvox. For if he is a member, complete diversity does not exist and the

Court does not have subject matter jurisdiction.[2] And if the Court lacks subject matter jurisdiction, it must dismiss the case. Fed.R.Civ.P. 12(h)(3).

Rule 12(b)(1) motions fall into two general categories: facial attacks and factual attacks. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).

> A facial attack is a challenge to the sufficiency of the pleading itself. On such a motion, the court must take the material allegations of the [complaint] as true and construed in the light most favorable to the nonmoving party.
>
> A factual attack . . . is not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction. On such a motion, no presumptive truthfulness applies to the factual allegations and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.

*Id.* (emphases and citations removed).

Here, Defendants make a facial attack on Plaintiff's complaint. (See Defs.' Mot. at 2, "[Plaintiff's] allegations make it clear that Plaintiff cannot move forward on this [c]omplaint, and certainly not in this Court.") The Court therefore is required to "take[] the allegations in the complaint as true[.]" *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).

Plaintiff has stated multiple times in his complaint that he is a member of Tecvox:

---

[2] For diversity jurisdiction purposes, a natural person is a citizen of the state of his domicile. *Safeco Ins. Co. of Amer. v. City of White House, Tenn.*, 36 F.3d 540, 544 (6th Cir. 1994). A limited liability company has the citizenship of each of its members. *Delay v. Rosenthal Collins Grp., LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009). As a result of a limited liability company's citizenship, when a member of a limited liability company participates in a suit against the limited liability company, "diversity of citizenship is destroyed." *Johnson v. Armitage*, 10-1808, 2011 WL 1838878, at *4 (N.D.Ohio May 13, 2011) (Lioi, J.) (citing *Delay*, 585 F.3d at 1005) (stating that if the limited liability company is a proper party, diversity jurisdiction is destroyed if members of the company are suing it.).

- On March 31, 2007, Plaintiff exercised his rights under the Option. (Compl. ¶ 59.)
- Khanijow "lauded [Plaintiff's] contributions to Tecvox [] and repeatedly acknowledged that [Plaintiff] was indeed an owner or 'member' of [Tecvox] by virtue of him having exercised his rights under the Option[.]"  (Compl. ¶ 61.)
- Plaintiff wrote "I own half of the company[.]"  (Compl. ¶ 62.)
- Khanijow confirmed to Plaintiff that Tecvox was "ours."  (Compl. ¶ 63.)
- "Khanijow has and continues to exercise unfettered control . . . and has taken advantage of this control in a manner that is willfully unfair and oppressive to [Plaintiff] as a minority member in Tecvox[.]"  (Compl. ¶ 72.)
- Khanijow "has wrongfully diluted and impaired [Plaintiff's] ownership interest in Tecvox[.]"  (Compl. ¶ 75.)
- "Plaintiff . . . as a member of Tecvox[]" can bring an oppression, dilution and squeeze-out cause of action.  (Compl. ¶ 86.)
- "[Plaintiff] paid and Tecvox [] received consideration for [Plaintiff's] membership interest in [Tecvox], and [Plaintiff] has all of the rights and privileges of a member under Alabama law."  (Compl. ¶ 88.)
- "Plaintiff holds a forty-nine [] percent membership interest in Tecvox[.]"  (Compl. ¶ 107.)
- "As a member of [Tecvox], Plaintiff is entitled to the financial statements and condition of [Tecvox.]"  (Compl. ¶ 125.)
- "[Plaintiff] properly exercised his option to acquire a 49 percent interest in [Tecvox.]"  (Compl. ¶ 131.)

In fact, only two of Plaintiff's nine causes of actions rest on the premise that Plaintiff is not a member of Tecvox–unjust enrichment and promissory estoppel.

Plaintiff argues that Defendants have "cherry-picked" his complaint in their motion and "wish to benefit from [Plaintiff's] membership in Tecvox in order to destroy complete diversity[.]" (Pl.'s Resp. at 1.) Defendants may have done so. But what they have also done is pointed out that Plaintiff's complaint insufficiently establishes subject matter jurisdiction. Plaintiff states he is a member of Tecvox, yet premises this Court's jurisdiction on an opposite proposition. These contradictory statements show that he has not established the Court's jurisdiction, as he is required to do on this motion to dismiss.

The Court recognizes that Plaintiff's complaint states that Defendants dispute Plaintiff's membership: "As of the filing of his Complaint, Plaintiff was not acknowledged or treated as a member of Tecvox, plain and simple." (Pl.'s Resp. at 7.) But Plaintiff's allegations in his complaint are what matter to this motion.

Because Plaintiff has not established that he is not a member of Tecvox, the Court finds that his complaint insufficiently alleges complete diversity and the Court must dismiss this case without prejudice. See *Bellar v. Bosco Lodge, LLC*, 10-0734, 2011 WL 1400292 (W.D.La. Apr. 13, 2011) (adopting report and recommendation, 2011 WL 1402835 (W.D.La. Mar. 18, 2011). In *Bellar*, the plaintiff, Bellar, filed suit against a limited liability company, Bosco. 2011 WL 1402835 at *1. The court determined Bellar was a member of the limited liability company. *Id.* The court held so over Bellar's argument that he never signed an operating agreement or articles of organization. *Id.* Bellar argued that he did intend to be a member at some time, but that he was unsure whether he was a true and actual member. *Id.* The magistrate judge held, and the court adopted, that a federal court

did not have jurisdiction over the case, as the plaintiff had not established that he was not a member of the limited liability company. *Id.* at *3. The court therefore found that diversity was lacking and dismissed the case for so lacking. *Id.* See also *Shevick v. Zupon Entm't, LLC*, 11-04228, 2011 WL 2495040, at *1 (C.D.Cal. June 22, 2011) (quoting with approval *Skaaning v. Sorensen*, 09-00364, 2009 WL 3763056, at *3 (D.Haw. Nov. 10, 2009), "because an LLC is a citizen of every state of which its owners or members are a citizen, and because complete diversity is required, if a plaintiff is an owner or member of a defendant LLC, then [the] diversity requirement of [28 U.S.C. § 1332] cannot be satisfied.").

Plaintiff has submitted *Symes v. Harris*, 472 F.3d 754 (10th Cir. 2006) as supplemental authority. He argues that *Symes* should persuade the Court to find that it does have subject matter jurisdiction over his claim. Because he relies heavily on the case, the Court will present a thorough review of it.

There, the plaintiffs, Mr. Symes and Mr. Northcott, United Kingdom citizens, filed suit against two individual citizens, Mr. and Ms. Harris, and a limited liability company, RIL, all Colorado citizens. *Id.* at 756. The plaintiffs alleged that Mr. Harris and Mr. Northcott entered into a binding contract to establish a business venture. *Id.* As part of the venture, the Harrises formed RIL as a Colorado limited liability company. *Id.* Each Harris owned fifty percent of RIL. *Id.* After that, Mr. Symes formed another limited liability company, REL, in the United Kingdom. *Id.* "Messrs. Symes, Harris, and Northcott then allegedly agreed that Mr. Symes, would become an investor and part owner fo the business venture, splitting the ownership between Mr. Symes, Mr. Northcott, and the Harrises." *Id.* at 757. Mr. Symes allegedly paid $250,000.00 to RIL, REL, Mr. Harris, and Mr. Northcott. *Id.* The

action arose because Mr. Harris believed that Mr. Symes had no ownership interest in the business and that Mr. Northcott has no interest in RIL's revenues or profits. *Id.*

Plaintiffs then filed suit, asserting several causes of action: "declaratory relief declaring that until Mr. Symes became an owner, the business venture was a partnership 'owned 50/50 by Northcott and the Harrises'; an accounting of RIL's business affairs and assets; declaratory relief declaring Mr. Symes to be a 30% owner of the business; specific performance requiring the Harrises to recognize Mr. Symes and Mr. Northcott's ownership interests in RIL and to pay Mr. Symes and Mr. Northcott their share of RIL's profits; breach of contract; and breach fo the fiduciary duty that Mr. Harris owed to Mr. Symes and Mr. Northcott as a partner in their business venture." *Id.* The plaintiffs, alleging diversity jurisdiction, stated explicitly in their complaint that they were not members of the limited liability they were suing. *Id.* at 759.

The district court question its subject matter jurisdiction and ultimately "held that it lacked jurisdiction because the remedy the plaintiffs sought, if granted, would render the plaintiffs part owners of RIL, thereby destroying diversity." *Id.* at 757. The district court also held that REL was a necessary party that could not be joined without destroying diversity. *Id.*

The Tenth Circuit reversed the district court. The Tenth Circuit posed its question around the issue: "whether the district court lacked jurisdiction when the remedy the plaintiffs seek, if granted, would retroactively render them part owners of the defendant RIL and thereby destroy complete diversity." *Id.* at 758. The Tenth Circuit held that the district court erred when it "assumed the truth of the plaintiffs' well-pleaded facts and concluded that the plaintiffs' allegations would require a remedy rendering them part owners of RIL,

thereby destroying diversity." *Id.* The appellate court reasoned that the district court has the duty to determine the jurisdictional facts "as they are when the complaint is filed, not as they might be upon final judgment." *Id.* The district court also erred when it "determin[ed] the parties' places of citizenship in light of the remedy that would apply if the plaintiffs' well-pleaded facts were proved at trial." *Id.* The Tenth Circuit stated that the district court framed its citizenship analysis "prospectively"–if the district court were to grant the plaintiffs' motion, then complete diversity would be lacking." *Id.* at 759. But this post-filing event, the Tenth Circuit held, "could not oust the district court's jurisdiction." *Id.*

Defendants have filed a sur-reply to Plaintiff's supplemental authority. They argue that this case is the "antithesis" of *Symes* because, in *Symes*, the plaintiffs stated in their complaint that they were not members of the limited liability company, whereas here, Plaintiff has specifically alleged that he is a member of Tecvox.[3] (Defs.' Sur-Reply at 1.)

The Court agrees with Defendants. The Court is not basing its decision off of a finding that it may make in the future, as the district court erroneously did in *Symes*. The Court is only basing its decision on Plaintiff's complaint. Because Defendants are making a facial challenge to the complaint's allegation of subject matter jurisdiction, the Court looks only to the complaint and its allegations. Here, Plaintiff states that he is a member of

---

[3]Plaintiff also argues in his supplemental authority brief that, under Alabama law, for Plaintiff to be a member of Tecvox, he must be "reflected in the required records of a limited liability company as the owner of some governance rights of a membership interest in the limited liability company." (Pl.'s Supplemental Authority at 3.) Plaintiff states that Defendants "have not presented any records [that] reflect that Plaintiff is such an owner." *Id.* But Defendants do not bear the burden to establish this Court's jurisdiction on this motion, Plaintiff does.

13

Tecvox. The Court finds this fact distinguishes this case from *Symes* and does not give the Court the ability to address the issues in this complaint.

### B. Tecvox is a necessary party and dismissal is required

Plaintiff argues, should the Court find that complete diversity does not exist, that the Court should dismiss Tecvox pursuant to Federal Rule of Civil Procedure 21 because Tecvox is not a necessary or indispensable party. (Pl.'s Resp. at 8-9.) Plaintiff states that Khanijow is the central player who gave rise to Plaintiff's claims and the damages he seeks are a direct result from Khanijow's improper and wrongful conduct, not Tecvox's. (*Id.* at 9.)

Federal Rule of Civil Procedure 21 "permits a district court to retain diversity jurisdiction over a case by dropping a nondiverse party if that party's presence in the action is not required under Federal Rule of Civil Procedure 19, that is, the party to be dropped must not be a necessary party." *Safeco Ins. Co. of Am. v. City of White House, Tenn.*, 36 F.3d 540, 545 (6th Cir. 1994) (citations omitted). "A party is 'needed for just adjudication'" and therefore necessary under Rule 19 if: "(1) complete relief cannot be given to existing parties in [its] absence; (2) disposition in [its] absence may impair his ability to protect [its] interest in the controversy; or (3) [its] absence would expose existing parties to substantial risk of double or inconsistent obligations." *Id.* (citing Fed.R.Civ.P. 19(a)(1)). "If *any* of the above criteria are satisfied, the person must be joined if feasible." *Tampone v. Richmond*, 10-11776, 2010 WL 3083539, at \*6 (E.D.Mich. Aug. 5, 2010) (Duggan, J.) (emphasis in original). If a party's participation in a suit destroys diversity, joinder is not feasible. *Id.* "If joinder is not feasible, the court must 'determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed.'" *Id.* (quoting Fed.R.Civ.P. 19(b)).

For that determination, Rule 19(b) gives the Court four factors to consider:

(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

(2) the extent to which any prejudice could be lessened or avoided by:

   (A) protective provisions in the judgment;

   (B) shaping the relief; or

   (C) other measures;

(3) whether a judgment rendered in the person's absence would be adequate; and

(4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

"The Rule 19(b) inquiry is guided by pragmatic considerations, rather than technical or formalistic legal distinctions."  *Id.* (quoting *Hooper v. Wolfe*, 396 F.3d 744, 749 (6th Cir. 2005).

Here, Tecvox is a necessary party because Plaintiff cannot get the full relief he has requested without Tecvox's presence.  Plaintiff has requested the following relief:

- damages against Defendants, jointly and severally, including all compensatory damages, lost profits, exemplary and/or punitive damages, and all other damages of any kind or nature to which Plaintiff is entitled;
- an award requiring Khanijow to disgorge all corporate funds and opportunities;
- an award requiring Defendants to purchase Plaintiff's ownership interest in Tecvox at its full fair market value;
- a full accounting, as well as an order requiring Defendants to turn over to Plaintiff all of the books and records in any way relating to Tecvox;

- attorneys' fees, costs, and pre- and post-filing interest; and

- any other damages or relief the Court deems necessary, including the dissolution of Tecvox.

Tecvox is needed to give full relief to Plaintiff. Plaintiff does not just seek dissolution of Tecvox.[4] Plaintiff seeks: a full accounting of Tecvox and all books and records relating to Tecvox; an award requiring Defendants to purchase Plaintiff's ownership interest in Tecvox, which would require a valuation of Tecvox; as well an award requiring Khanijow to disgorge all corporate funds and opportunities. The Court finds that Tecvox, and not only Khanijow, is central to the relief requested, and the Court finds that Tecvox is a necessary party.

Tecvox therefore must be joined if feasible. But here, Tecvox cannot be joined because its presence destroys subject matter jurisdiction. The Court therefore must weigh the Rule 19(b) factors to determine whether the case should be dismissed.

Here, the third and fourth Rule 19(b) factors weigh in favor of dismissal. As stated above, Plaintiff's remedy would not be adequate if Tecvox were not a party. As for the fourth factor, Plaintiff would have an adequate remedy, for he could litigate these claims in state court. The Court therefore finds dismissal appropriate.

Plaintiff argues that *George S. Hofmesiter Family Trust Dated June 21, 1991 v. FGH Industries, LLC*, 06-13984, 2006 WL 3741906 (E.D.Mich. Dec. 15, 2006) (Cleland, J.)

---

[4]Even if Plaintiff were only asserting a dissolution claim against Tecvox, the Court is not persuaded that that would require the Court to find that Tecvox is not a necessary party. See *Tampone*, 2010 WL 3083539, at *5 (stating, "[a]t least two federal courts have found no authority for 'holding that a [limited liability corporation] which a plaintiff seeks to put into receivership, dissolve, and enjoin from engaging in any business activity is merely a nominal party.'" (citing *Skaaning v. Sorensen*, 09-00364, 2009 WL 3763056, at *7 (D. Haw. Nov. 10, 2009) (quoting *Masters v. Harkleroad*, 303 F. App'x 859, 861 (11th Cir. 2008)).

should persuade the Court that Tecvox is a dispensable party and that the Court should dismiss Tecvox so that it has subject matter jurisdiction. There, the court held that FGH, the limited liability company, was dispensable. *Id.* at *6. The court held so because the plaintiffs had only asserted one count exclusively against FGH (minority oppression), and the plaintiffs were willing to dismiss the count.[5] *Id.* The court also found that the plaintiffs had centered their complaint around the misconduct of two individual defendants. *Id.* The plaintiffs primarily sought money damages against those two defendants. *Id.* FGH's role, the court held, was "merely one of the tools used towards" the two defendants' misconduct. *Id.* The court therefore found that the absence of FGH would not prejudice the other defendants and that the outcome of the case for the other defendants would not rise and fall with the presence or absence of FGH. *Id.* The court contrasted the lack of prejudice to the defendants to the great prejudice the plaintiffs would face because they alleged that no state other than Michigan would have personal jurisdiction over the other defendants. *Id.*

Defendants argue that *FGH Industries* is not illustrative because the plaintiffs only asserted one claim against the non-diverse FGH and that the plaintiffs would suffer great prejudice had they not proceeded with their case in Michigan. (Def.'s Reply at 4.) The Court agrees with Defendants. Here, Plaintiff has asserted several causes of action against Tecvox and Khanijow. And as discussed above, Tecvox is necessary for the

---

[5]The other counts those plaintiffs alleged were: conversion, aiding in the concealment of converted property, breach of fiduciary duty, unjust enrichment, breach of contract, civil conspiracy, and injunctive relief.

17

proper adjudication of this case as well as to give Plaintiff the opportunity to seek the full amount of relief he seeks.

## III. Conclusion

For the above-stated reasons, the Court GRANTS Defendants' motion and DISMISSES this case WITHOUT PREJUDICE.

SO ORDERED.

    s/Nancy G. Edmunds    
    Nancy G. Edmunds
    United States District Judge

Dated: August 15, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 15, 2011, by electronic and/or ordinary mail.

    s/Carol A. Hemeyer    
    Case Manager